UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| TEDDY ALLEN JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 18-088-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Teddy Jenkins ("Jenkins" or the "Claimant") appeals the Social Security Commissioner's denial of his application for disability insurance benefits ("DIB"). Jenkins has filed a motion for summary judgment, arguing that the Administrative Law Judge ("ALJ") assigned to his case made reversible legal errors and that her decision is not supported by substantial evidence. [Record No. 7] The Commissioner has filed a cross-motion for summary judgment, arguing that the ALJ's decision is proper. [Record No. 9] Because the ALJ applied the appropriate legal standards and rendered a decision supported by substantial evidence, Jenkins' motion will be denied and the Commissioner's will be granted.

## I. Procedural History

Jenkins filed an application for DIB under Title II of the Social Security Act ("the Act") on October 15, 2013, alleging that he had become disabled on September 27, 2010. [Administrative Transcript, hereafter "Tr." 140-153] ALJ William Wallis determined that Jenkins had the severe impairments of disorder of the back and bronchitis, but that the Claimant had the functional capacity to perform light work. *Id.* Specifically, he determined

that Jenkins could push, pull, lift, and carry 20 pounds occasionally, and 10 pounds frequently. [Tr. 147] Jenkins could sit and stand and/or walk six hours in an eight-hour workday and could frequently stoop, crouch, crawl, and climb ramps and stairs. He could only occasionally climb ladders, ropes, and scaffolds and was required to avoid exposure to dust, fumes, gases, odors, poor ventilation, and vibration. *Id.* It appears that Jenkins did not appeal the ALJ's determination and it became the final decision of the Social Security Administration.

Jenkins filed a subsequent application for DIB on May 18, 2015, again alleging an onset date of September 27, 2010. [Tr. 266] His date last insured was December 31, 2015. [Tr. 16] After this application was denied initially and on reconsideration, Jenkins requested an administrative hearing before an ALJ. [Tr. 194, 203, 210] ALJ Maria Hodges held a video hearing on December 15, 2017. She denied benefits in a written decision on March 27, 2018. [Tr. 12-26] The Appeals Council affirmed the ALJ's decision in June 2018. [Tr. 1-3] Accordingly, the Claimant has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. § 405(g).

## II.   Background

Jenkins was forty-four-years-old at the time of his application for benefits. He has an eleventh grade education and previously worked as a welder and millwright. [Tr. 117-19] Jenkins held a driver's license and was able to read, write, and perform simple math. He claims that he became disabled due to injuries sustained in an automobile accident occurring on September 27, 2010. Jenkins claimed that he was unable to work due to low back pain, pain and paresthesia of the hand and arms, sinus/allergy problems, anxiety, and ringing in his ears. [Tr. 296]

Jenkins described his back pain as constant, sharp, and running into his left lower extremity, although surgery has not been recommended. [Tr. 321] He had surgery for bilateral carpal tunnel syndrome and left cubital tunnel syndrome in 2015, but reports the surgeries did not help. [Tr ] Jenkins advised that he could lift approximately 10 pounds and could walk about 300 feet before needing to rest for fifteen minutes to an hour. [Tr. 332] He described an average day as using a heating pad, watching television, going to the mailbox, talking on the telephone or visiting a friend, and using the computer. [Tr. 327] He reported having been prescribed hearing aids, but stated that he cannot afford them. [Tr. 134]

Albaree Health Services provided Jenkins' primary care. Ayman Albaree, M.D. and Kelly Combs, PA-C provided regular allergy shots, and treated Jenkins for low back pain following his car accident in 2010. Practitioners at Albaree Health Services referred Jenkins to physical therapy and prescribed anti-inflammatory and pain medications. [Tr. 480-550] Jenkins attended several physical therapy treatments, but reported little to no improvement. [Tr. 624-38; 727-38; 743-51]

Matthew Nicholls, M.D., performed bilateral carpal tunnel releases and a left cubital tunnel release in late 2015. [Tr. 705-13] Nicholls initially noted that Jenkins had no complications and was progressing as expected after his surgeries. However, Nicholls ordered a nerve conduction test when Jenkins still complained of upper extremity pain nine months later. The study showed mild carpal tunnel syndrome, no radiculopathy, and improvement from before the surgeries. [Tr. 771] Nicholls suggested that Jenkins' residual pain could be a result of "mild hand arthritis." [Tr. 773]

Agency consultant Kip Beard, M.D., examined Jenkins in September 2015. [Tr. 388] Jenkins exhibited a normal gait and was able to get on and off the examination table without

obvious difficulty. Jenkins' cervical extension was limited to 60 degrees, but the remainder of his range of motion was normal. [Tr. 391] Beard noted that Jenkins could bend forward and to each side, and could stand on one leg without difficulty. The straight leg test while sitting was positive at 90 degrees, with some mild posterior left leg discomfort. [Tr. 392] There was no evidence of weakness, but Jenkins had decreased sensation in his left foot consistent with the L-5 distribution. Jenkins was able to squat halfway and walk on his heels and toes with some discomfort.

Beard diagnosed Jenkins with chronic lumbosacral strain with possible L-5 radiculopathy. He opined that Jenkins would have "limitations such as prolonged sitting, standing, bending, climbing, lifting and carrying, and prolonged or repetitious handling of objects, gripping, and grasping." [Tr. 393]

Diosdado Irlandez, M.D., reviewed Jenkins' file on October 22, 2015. [Tr. 171-74] Irlandez reviewed all of the evidence to that point, including Dr. Beard's assessment. Irlandez concluded that Beard's opinion was not fully consistent with the evidence and was an overestimate of Jenkins' ability to function. [Tr. 171] Irlandez assigned the following limitations: Jenkins could occasionally lift and/or carry 20 pounds and could frequently lift and/or carry 10 pounds. [Tr. 172] He opined that Jenkins could sit and stand and/or walk about six hours in a normal eight-hour workday. He also found that Jenkins could frequently climb and kneel, but could only occasionally stoop, crouch, or crawl. Irlandez noted that Jenkins had manipulative limitations in his left hand and that he could only frequently push and pull. He indicated that Jenkins should avoid concentrated exposure to vibration and hazards such as machinery and heights. [Tr. 173]

Alex Guerrero, M.D., reviewed Jenkins' file on January 5, 2016, and echoed Irlandez's findings. However, Guerrero limited Jenkins to frequent gross and fine manipulations, in light of deficits that remained following his carpal and cubital tunnel surgeries. [Tr. 188]

Jenkins obtained a medical source statement from Scott Arnett, M.D., who examined him in connection with his application for disability benefits on July 31, 2017 (over one and one-half years after Jenkins' date last insured). [Tr. 785-88] Arnett remarked that Jenkins exhibited lumbar paraspinal spasms, "decreased muscle strength [and] wasting on the left," a positive straight-leg raise on the left, and decreased deep tendon reflexes. [Tr. 785] Arnett reported that Jenkins had decreased range of motion in his cervical spine and markedly decreased range of motion in his lumbar spine. Arnett cited MRI studies from June 2016 and November 2017 (post-dating Arnett's examination), which revealed spinal degeneration. [Tr. 781-88]

Arnett assessed several functional limitations, including that Jenkins could infrequently lift or carry a maximum of 10 pounds; he could sit and stand and/or walk less than three hours per day. [Tr. 787] He also commented that Jenkins would require the ability to lie flat at unpredictable intervals for 20 to 30 minutes at a time. Arnett also reported that Jenkins could never balance, stoop, kneel, crouch, or crawl and that he could only occasionally climb distances of less than 10 feet. Finally, Arnett indicated that Jenkins should avoid heights, vibration, and extreme cold. [Tr. 788]

Nick Watters, Psy.D., reviewed the file in July 2015. [Tr. 170] He noted that Jenkins reported anxiety but did not allege functional limitations due to a mental condition. His primary care provider prescribed valium, and Jenkins had neither sought nor been referred to specialized mental health treatment. Watters concluded that Jenkins had only mild limitation

with respect to activities of daily living, maintaining social function, and maintaining concentration, persistence, or pace. And Jenkins had not experienced any episodes of decompensation. Dan Vandivier, Ph.D., reviewed Jenkins' file and agreed with Watters' assessment on December 28, 2015. [Tr. 185-86]

ALJ Hodges concluded that Jenkins had the following severe impairments: degenerative disc disease; carpal tunnel syndrome; cubital tunnel syndrome; bronchitis; and obesity. [Tr. 18] After considering all of the evidence, ALJ Hodges determined that Jenkins' residual functional capacity ("RFC") had become more limited since the previous ALJ's decision. Hodges concluded that Jenkins retained the ability to perform light work as defined in 20 C.F.R. § 1567(b), with the following limitations:

> Stand and/or walk four hours total out of an eight-hour workday, 30 minutes at a time; occasional pushing/pulling with both upper and lower extremities; frequently climb ramps and stairs, occasionally stoop, crawl, crouch, and kneel; and never climb ladders, ropes, and scaffolds. He is limited to frequent handling and fingering with both upper extremities; never reach overhead; and frequent reaching in all other directions; avoid concentrated exposure to vibration, pulmonary irritants, and hazards of moving machinery and unprotected heights.

[Tr. 20] Based on this RFC, the vocational expert testified that there were jobs existing in significant numbers in the national economy that Jenkins could perform. Accordingly, ALJ Hodges determined that Jenkins was not disabled as defined by the Social Security Act. [Tr. 24-26]

### III. Standard of Review

"[D]isability" is defined under the Social Security Act as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d

532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ based on a "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals an impairment listed in 20 C.F.R. Subpart P, Appendix 1, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot determine disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional activity ("RFC") and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

If the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience under the fifth step to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the

economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV. Discussion

#### A. The ALJ properly considered the opinion of Scott Arnett, M.D.

ALJ Hodges assigned little weight to the opinion of examining physician Scott Arnett, M.D. [Tr. 23] While Jenkins argues that this constitutes reversible error, the ALJ is not required to give any particular weight to the opinion of a non-treating source. The SSA will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" him, but it is not required to do so. 20 C.F.R. § 404.1527(d)(1). Here, it is clear that the ALJ considered Arnett's opinion and gave specific reasons for giving it little weight. ALJ Hodges explained that Arnett did not provide medical records to support his findings and the weight of the evidence was not consistent with the severe restrictions he assigned.

While Arnett provided vague references to Jenkins' MRI results, he did not explain why a general diagnosis of "degenerative disc disease" would cause the extreme limitations he imposed. [Tr. 786] Arnett remarked that there was "persistent symptomology related to carpal

tunnel and cubital tunnel syndrome," but he did not consider Jenkins' post-surgical nerve conduction test which revealed only mild deficits. Further, Dr. Arnett's opinion was rendered long after Jenkins' date last insured. While this evidence may be probative of a claimant's condition during the relevant period, Arnett did not indicate that was the case here. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (medical evidence post-dating claimant's date last insured is only relevant when it relates back to claimant's limitations prior to the date last insured). Accordingly, the ALJ did not err in her consideration of Arnett's opinion.

    **B.    The ALJ did not err by failing to take into consideration Jenkins' diverticulitis.**

Jenkins also argues that the ALJ erred by failing to take into consideration his diagnosis of diverticulitis. However, the ALJ did discuss Jenkins' subjective complaints concerning this diagnosis and considered all symptoms in fashioning the RFC. [Tr. 20-21] ALJ Hodges specifically referred to Jenkins' testimony that he has diverticulitis attacks once a week, but they are not "full blown" attacks and happen mostly when he eats something he is not supposed to eat. [Tr. 21] When questioned by his attorney, Jenkins stated that diarrhea affected his ability to do some physical activities. [Tr. 132] However, he did not elaborate on the which activities were affected and did not provide any testimony regarding frequency of bathroom visits. [*See* Tr. 132.] Further, he has not identified any additional restrictions that should have been included in his RFC due to this condition.

Although Jenkins underwent a colectomy in 2009, a CT scan performed in September 2015 showed "mild colonic diverticulosis." [Tr. 131, 619] He has failed to identify any evidence (other than his own statements) indicating that this condition would cause functional

limitations. Accordingly, the ALJ did not err by failing to evaluate such limitations explicitly or include them in the RFC.

        **C.**        **The ALJ did not err by concluding that the combined effects of Jenkins' impairments fail to meet a listing.**

ALJs must determine at Step Three whether a claimant is eligible for benefits based on an impairment or combination of impairments that meet or medically equal a listed impairment. ALJ Hodges evaluated Jenkins' degenerative disc disease, carpal tunnel syndrome, cubital tunnel syndrome, and bronchitis under listings 1.02 (major dysfunction of a joint(s)), 1.04 (disorders of the spine), 11.14 (peripheral neuropathy), and 3.02 (chronic respiratory disorders). [Tr. 19] She also considered the Claimant's obesity and the combined effects of his impairments and determined that his impairments did not meet or medically equal a listing. [Tr. 19] Jenkins argues that the combination of his low back problems, diverticulitis, anxiety, and cervical spine degeneration constitute a medically severe combination of impairments sufficient to equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Record No. 7-1, pp. 9-10]

It is the claimant's burden to prove that evidence of record supports a finding of medical equivalence. *See Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). A claimant can meet this burden by demonstrating a combination of impairments which in combination produce findings of equal medical significance to those of a listed impairment. *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 855 (E.D. Mich. 2012). Jenkins has failed to identify any evidence (a medical opinion or otherwise) indicating that a particular listing has been met or equaled. He has not even identified which listing he believes his impairments equal. The claimant's conclusory argument fails to meet the burden of demonstrating that his

conditions equaled a listed impairment. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> D. **The ALJ's decision is supported by substantial evidence.**

ALJ Wallis' March 2015 decision was the starting point for ALJ Hodge's decision. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840-41 (6th Cir. 1997). Hodges fashioned an RFC that was more restrictive, adding limitations to account for Jenkins' obesity, increased complaints of back and leg pain, and complaints related to carpal and cubital tunnel syndrome. Specifically, Hodges determined that Jenkins could only stand and/or walk in 30-minute intervals, for a total of four hours per day. And contrary to ALJ Wallis' prior decision, Hodges concluded that Jenkins could never climb ladders, ropes, and scaffolds. Importantly, Hodges determined that Jenkins could never reach overhead and that his ability to finger and handle was limited bilaterally.

Substantial evidence supports these findings. While Dr. Beard's findings were somewhat non-specific, he concluded that Jenkins was limited in his ability to remain in the same position for a prolonged period of time. He also found that Jenkins would have difficulty with repetitious grasping, gripping, and handling of objects. ALJ Hodges determined that his opinion was consistent with the weight of the objective medical evidence. She afforded it great weight, implementing specific restrictions to incorporate the limitations he assessed. [Tr. 23]

Agency consultants Irlandez and Guerrero largely agreed with Beard's findings, but their opinions included specific functional limitations, which the ALJ adopted in part. However, the ALJ limited Jenkins to four hours of sitting, rather than the six they recommended. Additionally, the ALJ noted that Irlandez rendered his opinion prior to Jenkins' wrist and elbow surgeries, and Guerrero provided his shortly thereafter. Recognizing this, the

ALJ added additional upper extremity limitations to account for Jenkins' lingering symptoms following his surgeries.

While Jenkins' treating physicians prescribed pain medicine and physical therapy, they did not provide a medical source statement and never indicated in treatment notes how the Claimant's impairments would impair his function. And as previously explained, the ALJ reasonably rejected Dr. Arnett's opinion, which was rendered well after Jenkins' date last insured, and was not supported by the record.

Based on the foregoing, the Commissioner's decision is based on relevant evidence that reasonable minds could accept as adequate. Accordingly, it is hereby

**ORDERED** as follows:

1. Plaintiff Teddy Jenkins' motion for summary judgment [Record No. 7] is **DENIED**.

2. Defendant Commissioner of the Social Security Administration's motion for summary judgment [Record No. 9] is **GRANTED**.

Dated: February 4, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge